**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CV-62441-STRAUSS**

**RICARDO TYRONE MITCHELL,**

　　　Plaintiff,

v.

**SANTANDER CONSUMER USA INC. and**
**VISTA BMW COCONUT CREEK,**

　　　Defendants.

_____/

## <u>ORDER[1] GRANTING MOTIONS TO COMPEL ARBITRATION</u>

THIS CAUSE comes before the Court on two Motions to Compel Arbitration, one [DE 7] by Defendant Santander Consumer USA Inc. ("Santander") and another [DE 16] from Defendant Pompano Imports, LLC f/k/a Pompano Imports, Inc d/b/a Vista BMW of Coconut Creek ("Vista").[2] The Court has reviewed the Motions, Plaintiff's Responses,[3] Defendants' Replies, and all other pertinent parts of the record. For the following reasons, the Motions will be **GRANTED**.

---

[1] All parties have consented to have me conduct all proceedings in this case under 28 U.S.C. § 636(c). [DE 22].

[2] This Order will refer to [DE 7] as "Santander's Motion," [DE 16] as "Vista's Motion," and the two collectively as "the Motions."

[3] Plaintiff filed a Response to Santander's Motion on December 10, 2025 [DE 8], followed by a separate "Amended and Supplemental Response" the next day, December 11, 2025 [DE 9], although the signature block indicates that both were signed on December 10. After Vista filed its own Motion to Compel Arbitration on January 23, 2026, Plaintiff filed an "Updated Opposition to Defendant's Motion to Compel Arbitration." [DE 17]. Given that Plaintiff's Certificate of Service for that "Updated Opposition" reflects a date of January 22, 2026 – i.e. a day *before* Vista filed its Motion – and the fact that the "Updated Opposition" only refers generically to "Defendant" (rather than specifically to Vista), it appears that the "Updated Opposition" was actually an unauthorized sur-reply regarding Santander's Motion. On February 2, 2026, Plaintiff then filed a "Notice of Supplemental Facts Relevant to Defendant's Motion to Compel Arbitration." [DE 19]. Although this filing came within the fourteen-day period allotted for Plaintiff to respond to Vista's Motion,

## I.  BACKGROUND

On October 23, 2025, Plaintiff, acting *pro se*, filed a Complaint in state court against Santander and Vista.  [DE 1-1].  Based on the Complaint's allegations, the case arises out of Plaintiff's purchase of an automobile from Vista, which he returned in 2018 based on persistent defects, and Santander's continued billing and derogatory credit reporting despite the vehicle's return.  *Id.* ¶¶ 5-12.  Plaintiff alleges violations of the Fair Credit Reporting Act ("FCRA"), Florida Consumer Collection Practices Act, and Florida Deceptive and Unfair Trade Practices Act, as well as a common law claim for unjust enrichment, seemingly against both Defendants.  *Id*. at 4-5.  Plaintiff also alleges one count of breach of warranty/contract against Vista.  *Id*. at 4.

On November 26, 2025, Santander removed the case to this Court, [DE 1], and, on December 3, 2025, filed Santander's Motion,  [DE 7].  Santander attached to its Motion a Declaration of Amanda Van Haren, Santander's Director of Process Fulfilment and Titles.  [DE 7-1].  The Declaration states that Santander maintains, in the course of its regular business, records

---

*see* S.D. Fla. L.R. 7.1(c)(1), the Notice appears directed only to Santander's Motion, given that it only lists Santander in the caption and certificate of service, and only addresses facts regarding Plaintiff's alleged settlement of his debt with Santander.  [DE 19].  In other words, both Plaintiff's "Updated Opposition" [DE 17] and Plaintiff's "Notice of Supplemental Facts" [DE 19] (and, arguably, his "Amended and Supplemental Response" [DE 9]) violate Local Rule 7.1(c)(1), which establishes deadlines for filing responses and replies to motions, requires that supporting materials (including affidavits and declarations) be filed with the response or reply they support, and prohibits filing "further or additional memoranda of law" without leave of Court.  Therefore, the Court can strike or disregard these unauthorized filings.  While the Court is cognizant that Plaintiff is *pro se*, and therefore must construe Plaintiff's pleadings liberally, Plaintiff is still required to comply with procedural rules.  *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020); *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) ("[A]lthough [courts] are to give liberal construction to the pleadings of *pro se* litigants, '[courts] nevertheless have required them to conform to procedural rules.'" (quoting *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002))).  Nevertheless, as discussed below, even giving Plaintiff the benefit of the doubt and considering his "Updated Opposition" [DE 17] and "Notice of Supplemental Facts" [DE 19] (and the declarations attached thereto), Defendants Motions are due to be granted.

2

for consumer accounts created by consumers who have entered into a retail installment contract with Santander, whereby Santander provides financing for a consumer's purchase of a motor vehicle, and retail installment contracts that Santander subsequently purchases from other entities. *Id.* ¶ 2. The Declaration attached as an exhibit a retail installment contract ("the Contract") between Plaintiff and Vista for purchase of the vehicle at issue in the Complaint. *Id.* ¶ 3, at 3, 4-6.[4] The Declaration further asserts that the Contract had been assigned to Santander (which is also stated on the bottom of page one of the Contract itself). *Id.* ¶ 4, at 3, 5.

Plaintiff signed the first page of the Contract as "Buyer" in five places. *See id.* at 5. In the middle of that page, he signed a section titled "Agreement to Arbitrate" as shown here:

*Id.* Towards the bottom of the page, he signed another section titled "NOTICE TO THE BUYER" as shown here:

*Id.* As shown above, the "Agreement to Arbitrate" section refers to "the Arbitration Provision on the reverse side of this contract." *Id.* Page two of the Contract has a box titled "Arbitration Provision," the top of which appears as follows:

---

[4] The Declaration further states that Van Haren has access to Santander's records and has knowledge of how those records are maintained. It also states that the Contract (and other similar records) are maintained by Santander in the ordinary course of its business and that the records are "made at the time of the events and conditions they describe either by people with first-hand knowledge of those events and conditions or from information provided by people with such first-hand knowledge." [DE 7-1] ¶ 2.

```
                              ARBITRATION PROVISION
                PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS
1.  EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2.  IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON
    ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL
    ARBITRATIONS.
3.  DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT
    YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.
```

*Id.* at 6.  Below these three bolded statements, the Arbitration Provision states:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by court action.

*Id.*  Further down, the Arbitration Provision states, "This Arbitration Provision shall survive any termination, payoff or transfer of this contract." *Id.*

Santander's Motion consequently argues that Plaintiff waived his right to have a court or jury hear the claims he brings in this case and agreed to have those claims resolved through arbitration.  [DE 7] at 3.  It further argues that the Arbitration Provision includes a delegation provision, under which any issues regarding the validity and scope of the Arbitration Provision are to be decided by the arbitrator, rather than the Court.  *Id.* at 5-6.  It further argues that, even if the Court disregards the delegation provision, the Arbitration Provision is valid and Plaintiff's claims are within its scope.  *Id.* at 6-9.

Plaintiff's Response to Santander's Motion argues that Santander has not shown Plaintiff voluntarily agreed to arbitrate, asserting that the Arbitration Provision was non-negotiable and part of a "take-it-or-leave-it" form.  [DE 8] at 2.  He further asserts that he had no meaningful opportunity to review or negotiate the arbitration terms and that they were never explained to him. *Id.*  He further argues that the arbitration provision is "unconscionable." *Id.* at 3.  Plaintiff also filed a "Amended and Supplemental Opposition," expounding on his initial Response.  [DE 9].

4

The Amended and Supplemental Opposition specified that "Plaintiff challenges the delegation clause as unconscionable, non-negotiated, hidden, and not knowingly agreed to." *Id.* at 1. It then reiterates that the arbitration clause is "procedurally and substantively unconscionable," takes issue with Santander's authentication of the Contract, argues that Plaintiff's FCRA claims fall outside the scope of the Arbitration Provision, and asserts that Santander has not proven it was validly assigned the Contract. *Id.* at 2. Plaintiff demanded an evidentiary hearing and requested limited discovery, but Plaintiff did not submit any declarations or affidavits in support of these responses. *Id.* Santander duly filed a Reply to Plaintiff's Response, [DE 10], and a separate Reply to Plaintiff's Amended and Supplemental Opposition, [DE 11]. In addition to addressing Plaintiff's arguments, these replies noted that Plaintiff had failed to provide any evidence, including affidavits, to support his arguments regarding the validity and unconscionability of the Arbitration Provision or the delegation provision. [DE 10] at 5-6; [DE 11] at 4-5.

On January 23, 2026, Vista filed its own Motion to Compel Arbitration. [DE 16]. Vista's Motion adopts Santander's Motion, *id.* ¶ 6, and raises similar arguments as Santander (along with specifically addressing why the claims brought against Vista are within the scope of the Arbitration Provision). Plaintiff did not separately respond to Vista's Motion. As detailed further in footnote 3, *supra*, he filed an "Updated Opposition to Defendant's Motion to Compel Arbitration" [DE 17] and "Notice of Supplemental Facts Relevant to Defendant's Motion to Compel Arbitration" [DE 19] that, while coming soon after Vista's Motion, appear connected to Santander's Motion (from more than a month earlier).

## II.     LEGAL STANDARD

An arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Federal

5

Arbitration Act ("FAA") "creates a 'presumption of arbitrability' such that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115-16 (11th Cir. 2014)).  However, the presumption of arbitrability "does not apply to disputes concerning whether an agreement to arbitrate has been made."  *Id.* (quoting *Dasher*, 745 F.3d at 1116).  Consequently, "[t]he party asserting the existence of a contract has the burden of proving its existence and its terms."  *Id.* at 1330 (citation omitted); *see also CEFCO v. Odom*, 278 So. 3d 347, 352 (Fla. 1st DCA 2019) ("The party seeking enforcement of an agreement has the burden of establishing that an enforceable agreement exists.").

When a motion to compel arbitration is filed, courts consider the following: "(1) whether a valid agreement to arbitrate exists, (2) whether an arbitrable issue exists[,] and (3) whether the right to arbitrate was waived."  *Gomez v. Allied Pros. Ins. Co.*, No. 19-CV-24994, 2020 WL 2197865, at *3 (S.D. Fla. May 6, 2020) (citations omitted); *see also Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999) ("Under both federal statutory provisions and Florida's arbitration code, there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived.").  Assuming a defendant has carried its burden to prove the existence of an arbitration agreement, "[a] plaintiff challenging the enforcement of an arbitration agreement bears the burden to establish, by substantial evidence, any defense to the enforcement of the agreement."  *Gomez*, 2020 WL 2197865, at *3 (quoting *Inetianbor v. CashCall, Inc.*, 923 F. Supp. 2d 1358, 1362 (S.D. Fla. 2013)).

III.    **ANALYSIS**

Plaintiff raises three main arguments in opposition to the Motions.  First, he asserts that no agreement to arbitrate exists because he did not knowingly and voluntarily enter into the

6

agreement.  [DE 8] at 2-3.  Second, he argues that the arbitration agreement is unconscionable.

[DE 8] at 3; [DE 9] at 1.  Third, he argues that at least some of his claims are outside the scope of

the arbitration agreement, either because they occurred after the contract ended or because they do

not arise from the Contract.  [DE 9] at 1-2; [DE 19] ¶¶ 9-10.[5]

### A.  <u>Existence of a Valid Agreement to Arbitrate</u>

"[A] party cannot be required to submit to arbitration any dispute which he has not agreed

so to submit."  *JPay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018) (quoting *United*

*Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).  When the

making of an arbitration agreement is "in issue, the court shall proceed summarily to the trial

thereof." 9 U.S.C. § 4.  To determine whether the making of the agreement is in issue, courts apply

---

[5] Plaintiff also argues that Santander has not adequately authenticated the Contract because it "submitted only a partial contract image missing the wet-ink original, missing pages, and lacking chain-of-assignment" and because Van Haren "lacks personal knowledge, relies on hearsay, does not authenticate signatures, and fails to attach complete records."  [DE 9] at 2.  These arguments fail.  Van Haren's declaration establishes her basis of knowledge, establishes the Contract as a record of regularly conducted activity, and provides sufficient evidence to determine that the Contract "is what [Santander] purports it to be."  *See* Fed. R. Evid. 803(6); 901(a).  There is no requirement that Santander produce a "wet-ink" original (nor does Plaintiff point to any authority to the contrary).  *See* Fed. R. Evid. 1003.  To the extent Plaintiff appears to contend that there are pages missing or any other defect that would undermine authenticity, Plaintiff has failed to put forward any evidence (in the form of sworn statements or otherwise) that would undermine the evidence provided by Van Haren's declaration.  Plaintiff also argues – in completely conclusory fashion – that Santander has not proven a valid assignment of the Contract from Vista to Santander. This assertion again ignores the admissible evidence from Van Haren's declaration (and the Contract itself) to the contrary without Plaintiff putting forth any evidence of his own.  Finally, to the extent that Plaintiff raised an argument that Santander waived its right to arbitration by negotiating a settlement with Plaintiff, he raised this argument for the first time in his Notice of Supplemental Facts [DE 19] and without providing any legal authority or analysis.  As discussed *supra*, this Notice of Supplemental Facts was, effectively, an unauthorized sur-reply filed without Court authorization.  Because Plaintiff raised the argument in conclusory fashion and raised it for the first time in a sur-reply (and an unauthorized one at that), the Court will not consider this argument.  *Cf. DeRossett v. Se. Toyota Distribs., Inc.*, No. 17-CV-60415, 2017 WL 7311876, at *1 (S.D. Fla. Aug. 4, 2017) ("[T]he Court will not consider arguments that exceed the permissible scope of the Reply." (citing S.D. Fla. L. R. 7.1(c) and collecting cases)).

a summary judgment-like standard. *Bazemore*, 827 F.3d at 1333. Thus, "a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement." *Id.* (citing Fed. R. Civ. P. 56(a)). "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citations omitted). The Eleventh Circuit "repeatedly has emphasized that '*state law* generally governs whether an enforceable contract or agreement to arbitrate exists.'" *Bazemore*, 827 F.3d at 1329 (citation omitted).

Plaintiff does not dispute that he signed the Contract.[6] Rather, Plaintiff argues that Santander has not shown a "clear, knowing, and voluntary agreement to arbitrate[.]" [DE 8] at 2. In support of this argument, Plaintiff asserts that he is an unsophisticated consumer who "was not given a meaningful opportunity to review, negotiate, or reject" the Arbitration Provision and that the Arbitration Provision (and the consequences of relinquishing "his right to a jury trial, full discovery, and public adjudication in federal court") were not explained or made clear to him. *Id.* He further asserts that the Arbitration Provision "is buried within dense, fine print." *Id.* He also argues that the Arbitration Provision was part of a "non-negotiable, take-it-or-leave-it form as part of boilerplate contract language." *Id.* Significantly, Plaintiff fails to cite any authority or point to any analogous case to support his arguments that the circumstances he describes undermine formation of the Contract here. Regardless, Plaintiff's arguments fail.

---

[6] Regardless of the arguments against authenticity addressed in n.5, *supra*, at a Status Conference on April 29, 2026, Plaintiff confirmed that he was not contesting he signed the Contract.

First, while perhaps relevant to (though not determinative of) his separate argument that the Arbitration Provision is unconscionable, Plaintiff's assertions about the Arbitration Provision being "boilerplate," "non-negotiable," or "take-it-or-leave-it," do not undermine whether an agreement was formed.  *See, e.g.*, *Spring Lake NC, LLC v. Holloway*, 110 So. 3d 916, 918 (Fla. 2d DCA 2013) (explaining that in an age of "typical standardized contract[s] . . . signed without any expectation that the terms will actually be negotiated between the parties" courts no longer expect a literal "meeting of the minds" to establish mutual agreement).

Second,

> It has long been held in Florida that one is bound by his contract. Unless one can show facts and circumstances to demonstrate that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the contract, it is binding. No party to a written contract in this state can defend against its enforcement on the sole ground that he signed it without reading it.

*Allied Van Lins, Inc. v. Bratton*, 351 So. 2d 344, 347-48 (Fla. 1977).  Consequently, Florida courts have held that "generally parties to a written instrument have a duty to learn and understand the contents of that instrument before signing it."  *Keller v. Reed*, 603 So. 2d 717, 720 (Fla. 2d DCA 1992); *Rivero v. Rivero*, 963 So. 2d 934, 938 (Fla. 3d DCA 2007) (citing *id.*).  Indeed, Florida courts have applied this principle even where parties that signed a contract with an arbitration agreement were unable to read English, were legally blind, or had physical or mental limitations making it difficult to understand their agreements.  *See Kendell Imps., LLC v. Diaz*, 215 So. 3d 95, 100 (Fla. 3d DCA 2017); *Estate of Etting ex rel. Etting v. Regents Park at Aventura, Inc.* 891 So. 2d 558, 558 (Fla. 3d DCA 2004); *Spring Lake*, 110 So. 3d at 918.  In other words, contrary to what Plaintiff implies, even if no one pointed out, highlighted, mentioned, or explained the Arbitration Provision to Plaintiff before he signed the Contract, Plaintiff is still bound by the Contract unless he was prevented from reading it.

Plaintiff has not presented sufficient evidence to demonstrate that he was prevented from reading the Contract, nor even sufficient evidence to raise a genuine issue of fact requiring a hearing.  Plaintiff's Amended and Supplemental Opposition to Santander's Motion mentions (under the heading "The Arbitration Clause is Procedurally and Substantively Unconscionable") that he was "rushed." [DE 9] at 1.  Even assuming Plaintiff meant to argue that whatever "rushing" occurred rose to the level of actually preventing Plaintiff from reading the Contract, Plaintiff did not actually assert that any Defendant prevented Plaintiff from reading the Contract.  Nor did he provide any detail regarding who "rushed" him or any other detail that would suggest that this "rushing" prevented him or misled him into not reading the contract.  And, even if he had provided more description in his response, Plaintiff failed to provide any *evidence* with his response that would have supported such descriptions.

Only after Santander argued in its Reply to Plaintiff's Amended and Supplemental Opposition that  Plaintiff had failed to submit affidavits or other evidence to support his contentions of invalidity, *see* [DE 11] at 7-8, did Plaintiff eventually file (more than a month later) an "Updated Opposition to Defendant's Motion to Compel Arbitration," attaching declarations from Plaintiff's mother, Clara Jackson, and wife, Britney Allison Mitchell.  [DE 17].  However, these declarations are not sufficient to create a genuine issue.

For one, as discussed in footnote 3, *supra*, Plaintiff's "Updated Opposition" runs afoul of the Court's Local Rules, coming both well out of time and in contravention of the Court's rule against filing "additional memoranda" without leave of court.  The circumstances here illustrate why the rule exists, as Plaintiff only provided declarations after Santander had completed its Reply. In other words, Plaintiff, having already had his chance to respond, waited to provide declarations

until after Santander had pointed out his failure to support his arguments and left Santander without an opportunity to address the new evidence.

However, even considering the belatedly filed declarations, they are insufficient to create a genuine issue on whether Plaintiff was prevented from reading the Contract.  Ms. Jackson states that Plaintiff "was rushed through the signing process, repeatedly told to 'sign here' and 'initial here,' without any explanation of the documents he was signing, and I received no explanation as the co-signer either." [DE 17] at 3.  She further declared, "The dealership did not provide Ricardo or me enough time or opportunity to review the contract or understand what we were signing." *Id.* Ms. Mitchell similarly declared that Plaintiff "was hurried through the documents, and employees pressured him to sign quickly without explaining any terms.  The dealership did not provide Ricardo an opportunity to properly review the paperwork or understand the legal rights were being waived." *Id.* at 4.  Neither of these declarations expressly state that Plaintiff was prevented from reading the Contract and focus instead on the fact that no one explained or highlighted the Arbitration Provision.  To the extent they say he "was rushed," "hurried," or "pressured," the declarations are vague and conclusory, omitting the kind of detail from which the Court could infer that Plaintiff was actively prevented from reviewing the Contract. *See Valencia v. 1300 Ocean Drive, LLC*, No. 17-20669-CIV, 2017 WL 7733158, at *2 (S.D. Fla. Dec. 4, 2017) ("A mere scintilla of evidence supporting the opposing party's position will not suffice to defeat a finding that an arbitration agreement was formed.").

These vague and conclusory statements come in the face of plain evidence that the Contract itself encouraged Plaintiff to read the Contract and warned him explicitly to review the Arbitration Provision.  Plaintiff signed directly under (and on top of) a section with the bold-lettered introduction "**Agreement to Arbitrate**." [DE 7-1] at 5.  He signed in another box that started with

11

an all-caps "NOTICE TO BUYER," followed by a bold-lettered warning: "**a) Do not sign this contract before you read it** . . . ." *Id.* Directly below that part, and directly above the part where Plaintiff signed, is a further bold-lettered statement that states, "**You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read both sides of this contract, including the arbitration provision on the reverse side, before signing below."** *See Kendall Imports*, 215 So. 3d at 100 (noting identical language). Plaintiff's signature even crossed over much of this language. *See* [DE 7-1] at 5. In short, even employing a summary judgment-like standard, the vague, conclusory statements in Ms. Jackson's and Ms. Mitchell's declarations do not create a genuine issue that Plaintiff was prevented from reading the Contract and did not enter into an enforceable contract.

For the foregoing reasons, I conclude that an agreement between the parties to arbitrate exists.

### B. Unconscionability and Delegation Provision

Plaintiff next argues that the Arbitration Provision is unconscionable, and, therefore, invalid. In addition to arguing that the Arbitration Provision is not unconscionable, Santander argues that the Arbitration Provision includes a delegation provision, which delegates to the arbitrator any issues regarding the formation, scope, and enforceability of the Arbitration Provision (including whether it is unconscionable). Ultimately, the Court concludes that the parties agreed to delegate issues of arbitrability (including whether the Arbitration Provision is unconscionable) to the arbitrator and that the delegation provision itself is not unconscionable. Therefore, the delegation provision should be enforced and the arbitrator should decide whether the Arbitration Provision is unconscionable.

1. Unconscionability

"Under the FAA, an agreement can be defeated by fraud, duress, unconscionability, or another generally applicable contract defense." *Larsen v. Citibank FSB*, 871 F.3d 1295, 1308 (11th Cir. 2017) (citation modified). "Unconscionability is a common law doctrine that courts have used to prevent the enforcement of contractual provisions that are overreaches by one party to gain 'an unjust and undeserved advantage which it would be inequitable to permit him to enforce.'" *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1157 (Fla. 2014) (citation omitted). The doctrine encompasses "an *absence of meaningful choice* on the part of one of the parties together with contract terms which are *unreasonably favorable to the other party.*" *Robinson v. NBC Universal Cable*, No. 17-CV-81324, 2018 WL 8620154, at *2 (S.D. Fla. Apr. 23, 2018) (quoting *Basulto*, 141 So. 3d at 1157-58). "The absence of meaningful choice when entering into the contract is often referred to as procedural unconscionability, which 'relates to the manner in which the contract was entered,' and the unreasonableness of the terms is often referred to as substantive unconscionability, which 'focuses on the agreement itself.'" *Id.*

A party seeking to avoid enforcement of an allegedly unconscionable arbitration agreement must show both procedural and substantive unconscionability. *Id.* (citing *Basulto*, 141 So. 3d at 1158). Although "both elements must be present, they need not be present to the same degree." *Basulto*, 141 So. 3d at 1159. In fact, a balancing or sliding-scale approach is utilized. *Id.* This approach allows for "one prong to outweigh another provided that there is at least a modicum of the weaker prong." *Id.* (citation omitted). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (citation omitted). At bottom, "although the concept of unconscionability is made up of both a procedural component and a substantive component, it

13

often involves an evaluation in which the two principles are intertwined." *Id.* at 1160. Consequently, "both should be evaluated interdependently rather than as independent elements." *Id.* at 1161.

A court's evaluation of procedural unconscionability generally entails consideration of the following:

> (1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract.

*Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1135 (11th Cir. 2010) (citation omitted).  On the other hand, the substantive unconscionability inquiry "focuses on the terms of the agreement itself and whether the terms of the contract are 'unreasonable and unfair.'" *Id.* at 1139 (citations omitted).  An agreement is substantively unconscionable if its terms are "so outrageous as to shock the judicial conscience." *Jonathan M. Franz, M.D., P.A. v. Shedden*, 974 So. 2d 1193, 1197-98 (Fla. 2d DCA 2008) (citations omitted); *Lazo v. W. Coast Trucking Corp.*, No. 17-CV-21165, 2017 WL 9324346, at *3 (S.D. Fla. June 12, 2017) (citation omitted).

2.   Delegation provisions

While questions of arbitrability – gateway questions – are presumptively for the Court to decide, *JPay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018), the FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019) (first citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010); and then citing *First Options*, 514 U.S. at 943-44).  In other words, "parties may agree to arbitrate gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of

14

the arbitration agreement." *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) (citing *Rent-A-Ctr.*, 561 U.S. at 68-69). Questions about the "validity" or "enforceability" of an arbitration agreement – including whether an arbitration agreement is unconscionable – are arbitrability questions. *Attix v. Carrington Mortg. Servs.*, LLC, 35 F.4th 1284, 1299 (11th Cir. 2022) (citing *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367-68, 1377-79 (11th Cir. 2005)).

An agreement to arbitrate gateway questions is often referred to as a delegation agreement (or delegation clause or provision) because such a provision "delegates the resolution of disputes about the arbitrability of the parties' claims to an arbitrator." *Attix*, 35 F.4th at 1295 (citing *Rent-A-Ctr.*, 561 U.S. at 68). "A delegation agreement 'is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.'" *Id.* (quoting *Rent-A-Ctr.*, 561 U.S. at 70). "[W]here an arbitration agreement contains a delegation provision – committing to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable – the courts only retain jurisdiction to review a challenge to that specific provision." *Id.* at 1303 (quoting *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1144 (11th Cir. 2015)).[7] "Courts should not assume that

---

[7] *But see Attix*, 35 F.4th at 1309 n.15 ("We note, as we have said before, that our reference to jurisdiction in *Parnell* was not a reference to jurisdiction in its technical sense. We meant only to convey that whether the arbitration agreement was enforceable was a decision committed not to the court, but to the arbitrator." (internal citations and internal quotation marks omitted)). Moreover, even when a delegation provision is present, courts must still determine "at the outset" whether an agreement exists at all. *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 398 (5th Cir. 2022) (citing *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 514 (5th Cir. 2019)). Stated differently, when the making of the arbitration agreement is at issue, courts must find that the parties agreed to the arbitration agreement before referring the matter to arbitration. *See Henry Schein*, 139 S. Ct. at 530 ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists.").

the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options*, 514 U.S. at 944 (citation modified).

Here, the parties' agreement to arbitrate includes "clear and unmistakable evidence" that they agreed to delegate questions of arbitrability to the arbitrator.  Again, the Arbitration Provision includes the following:

> ***Any claim or dispute***, whether in contract, tort, statute or otherwise (***including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute***), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by court action.

[DE 7-1] at 6 (emphasis added).  This provision specifies that any claim or dispute, including the arbitrability of the claim or dispute, arising out the Contract should be resolved by arbitration. Again, "arbitrability" encompasses the validity of the Arbitration Provision itself (including whether it is unconscionable).  *Attix*, 35 F.4th at 1299.  And "any disputes means all disputes, because any means all." *Waffle House*, 866 F.3d at 1267 (citation modified).

That does not entirely end the issue, however.  While Plaintiff does not offer any argument about the scope of the delegation provision, Plaintiff (at least ostensibly) argues that the delegation provision itself is unconscionable.  *See* [DE 9] at 1.  "An agreement to arbitrate questions about the validity or enforceability of a primary arbitration agreement *is itself* an arbitration agreement." *Attix*, 35 F.4th at 1303 (citing *Rent-A-Center*, 561 U.S. at 69) (emphasis in original).  "And while, under the delegation agreement, challenges to the primary arbitration agreement's validity or enforceability are off-limits to the courts, a court must always consider a validity or enforceability challenge that is 'specific' to the delegation agreement before enforcing it."  *Id.* (first citing *JPay*, 904 F.3d at 942-43; and then citing *Rent-A-Center*, 561 U.S. at 70-71).  However, "to overcome a

delegation agreement, a party must challenge the validity or enforceability of the parties' precise agreement to arbitrate threshold arbitrability issues." *Id.* at 1302; *see also Rent-A-Center*, 561 U.S. at 72 ("Accordingly, unless Jackson challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator.").

      3.  Unconscionability of the Delegation Provision

Plaintiff has arguably failed to sufficiently challenge the delegation provision with specificity. In his Amended and Supplemental Opposition, he states only in the most perfunctory terms: "Plaintiff challenges the delegation clause as unconscionable, non-negotiated, hidden, and not knowingly agreed to. Under Rent-A-Center, this Court must decide its enforceability." [DE 9] at 1. His challenge to the delegation provision is essentially wrapped up in, and indistinguishable from, his challenge to the Arbitration Provision as a whole. And while he cites the same circumstances for arguing that the delegation provision is procedurally unconscionable (that the provision was "hidden" and "non-negotiated") as he does with the Arbitration Provision as a whole, he makes no argument about why the delegation provision is substantively unconscionable. *See Rent-A-Center*, 561 U.S. at 73 (finding that plaintiff did not specifically challenge delegation provision when his arguments for substantive unconscionability were not specific to the delegation provision, rather to the arbitration agreement as a whole); *Attix*, 35 F.4th at 1304 ("[T]o 'directly' or 'specifically' challenge the validity or enforceability of a delegation agreement, it is not sufficient for a party to merely say the words, 'I am challenging the delegation agreement.' Challenging a delegation agreement is a matter of substance, not form. A party specifically challenges the validity or enforceability of a delegation agreement if, and only if, the substantive nature of the party's challenge meaningfully goes to the parties' precise agreement to delegate

threshold arbitrability issues."). Consequently, the Court could conclude, as in *Rent-A-Center*, that it simply must enforce the delegation provision and leave any and all arguments regarding unconscionability to the arbitrator.

However, even giving Plaintiff the full benefit of the doubt and assuming he adequately articulated a specific challenge to the delegation provision itself, the Court concludes that his challenge fails and that the delegation provision is not unconscionable. As discussed above, Plaintiff must demonstrate that the delegation provision is *both* procedurally and substantively unconscionable. *Basulto*, 141 So. 3d at 1158. While Plaintiff identifies some circumstances that could contribute towards a finding of procedural unconscionability, he completely fails to establish substantive unconscionability.

### a.   Procedural Unconscionability

Plaintiff's assertions that the delegation provision was "non-negotiated" and "hidden," if true, could contribute to a finding of procedural unconscionability, as could his related assertions (aimed at the Arbitration Provision generally) that the Contract was a "take-it-or-leave-it adhesion agreement" and that "Plaintiff was rushed, was not informed of arbitration implications, and had no ability to negotiate." Of course, as discussed above, Plaintiff offered no substantive evidence to support these assertions until the belatedly filed declarations of Ms. Jackson and Ms. Mitchell. Again, those declarations stated, in a fairly vague and conclusory fashion, that:

- Plaintiff "was rushed through the signing process, repeatedly told to 'sign here' and 'initial here,' without any explanation of the documents he was signing, and I received no explanation as the co-signer either." [DE 17] at 3.

- Plaintiff "was hurried through the documents, and employees pressured him to sign quickly without explaining any terms." *Id.* at 4.

- "The dealership did not provide Ricardo or me enough time or opportunity to review the contract or understand what we were signing." *Id.* at 3.

18

- "The dealership did not provide Ricardo an opportunity to properly review the paperwork or understand the legal rights were being waived." *Id.* at 4.

However, even considering Plaintiff's assertions and the statements in these declarations (and assuming them as true on a summary judgment-like standard), Plaintiff has not demonstrated that the Arbitration Provision was unconscionable.

First, while the Court must consider whether the Contract was a contract of adhesion, what the relative bargaining power of the parties was, and whether the Contract was presented as a "take-it-or-leave-it" proposition, *Basulto*, 141 So. 3d at 1160, "the presence of an adhesion contract alone does not require a finding of procedural unconscionability." *Kendall Imports*, 215 So. 3d at 109-10.  Moreover, Plaintiff has not actually presented evidence that he was prohibited from negotiating or that the Contract was presented as "take-it-or-leave-it."  His assertions that it was such a "take-it-or-leave-it" agreement are all unsworn; and he does not indicate anywhere (in sworn or unsworn statements) that he attempted to negotiate.

Second, Plaintiff combines the assertions that he was "rushed" or "pressured," that he was given insufficient time to review the contract, that no one explained the Arbitration Provision or its consequences, and that the Arbitration Provision was "buried in fine print" to argue that he did not have a meaningful opportunity to understand the terms.  However, there are a couple of problems with these assertions.  As detailed above, the Arbitration Provision was not "buried in fine print," hidden, or made difficult to understand.  Rather Plaintiff had to sign right next to (and on top of) the words "Agreement to Arbitrate" in bold type, which was followed by a plain language explanation that he was agreeing to an "Arbitration Provision" whereby any disputes would be resolved by arbitration "and not by court action."  He also had to sign separately over bolded language warning him to read the contract before signing, acknowledging that he had read

19

it before signing, and specifically referencing "the arbitration provision on the reverse side."  On that reverse side, the Arbitration Provision was separated by its own box, with bold, all-caps headings.  At the top of that box, the bold, all-caps language plainly stated that the Arbitration Provision "AFFECTS YOUR LEGAL RIGHTS" and that it meant having disputes decided "BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL."  While the delegation provision was not in one of these bolded sentences, it was contained in the first sentence underneath the bolded language, stating quite plainly that any claim or dispute "including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute" would be resolved by arbitration.  So, the Arbitration Provision in general, and the delegation provision specifically, were not hidden from Plaintiff or written in such nebulous language that he could not understand it.  The fact that no one voluntarily explained the agreement to Plaintiff or advised him he did not need to sign it is not enough to conclude that the agreement is procedurally unconscionable.  *See Fla. Holdings III, LLC v. Duerst ex rel. Duerst*, 198 So. 3d 834, 840-41 (Fla. 2d DCA 2016).

Assertions that Plaintiff was "pressured" or not given enough time to review the Contract can contribute to a finding of procedural unconscionability.  But what Plaintiff has presented here is not sufficient.  As stated above, even the declarations he presents provide little detail about how he was "pressured," how much time he had to review the Contract, and, importantly, whether he ever asked for more time or made any attempt to better understand its terms.  He provides no specific information suggesting he was actually precluded from inquiring about the terms.  And he never addresses whether he could obtain the desired product or service elsewhere, which is significant for understanding why any "pressure" or "rushing" would so overwhelm the warnings presented in the bold-faced language described above.  *See Kendall Imports*, 215 So. 3d at 110.

20

At bottom, even if Plaintiff has pointed towards some circumstances that could contribute to a finding of procedural unconscionability, he has not carried his burden to show that the Contract was procedurally unconscionable. And, when employing *Basulto*'s interdependent approach, even to the extent that he has demonstrated procedural unconscionability, he has not shown it to such a degree that it overcomes the total lack of substantive unconscionability (discussed below).

b. Substantive Unconscionability

Plaintiff argues that the Arbitration Provision is substantively unconscionable because it is "overly harsh" and "one-sided." [DE 8] at 3; [DE 9] at 1. Although he does not elaborate much, Plaintiff specifically points to the following aspects of the Arbitration Provision: (1) eliminating Plaintiff's right to a jury trial; (2) restricting Plaintiff's access to full discovery; (3) moving the case to a private forum; (4) reducing Plaintiff's leverage to obtain full compensation and statutory relief. However, Plaintiff fails to show that these terms are so outrageously unfair that they "shock the judicial conscience." *Jonathan*, 974 So. 2d at 1197-98.

First, despite Plaintiff's assertions to the contrary, the delegation provision is not "one-sided," as it applies equally to both parties. Second, while the delegation provision (and the Arbitration Provision as a whole) do waive Plaintiff's right to a jury trial and move the case to a private forum, these terms are not outrageous. That is not to say that removing this dispute from public courts, and sacrificing some of the protections guaranteed by the Constitution, is not without consequences. However, it is not a circumstance that shocks the judicial conscience. Indeed, if moving a dispute from public courts to private arbitration were substantively unconscionable, every arbitration agreement would be invalid. But the countless court decisions compelling arbitration (including cases involving consumer plaintiffs) clearly indicate otherwise.

Third, Plaintiff's bald assertion that the Arbitration Provision restricts his access to full discovery is unavailing.  Notably, this argument seemingly goes much more towards the fairness of the Arbitration Provision as a whole, rather than the delegation provision specifically.  Putting that aside, it is true the Arbitration Provision warns that "[d]iscovery and rights to appeal in arbitration are generally more limited than in a lawsuit[.]"  [DE 7-1] at 6.  But Plaintiff fails to identify any particular limitation on discovery or explain how any such limitation would significantly or negatively affect his ability to prove his claims.  Significantly, Santander points out that the rules of the American Arbitration Association[8] permit a wide range of discovery, allowing

> exchange of information among the parties, including depositions, interrogatories, document production, or by other means, with a view to achieving an efficient and economical resolution of the dispute while, at the same time, promoting equality of treatment and safeguarding each party's opportunity to fairly present its claims and defenses.

Am. Arb. Ass'n, *Consumer Arbitration Rules and Mediation Procedures* R-20(a) (2025) [hereinafter AAA Rule 20], https://www.adr.org/media/yawntdvs/2025_consumer_arbitration_ru les.pdf.  Indeed, much like Federal Rule of Civil Procedure 26(a), those rules require parties to exchange documents in their possession or custody on which they intend to rely and to identify witnesses.  *See* AAA Rule 20(b).  They further allow the arbitrator (on the arbitrator's own initiative or at the request of a party) to require parties to produce documents "in response to reasonable document requests" that are "reasonably believed . . . to exist and to be relevant and material to the outcome of disputed issues."  AAA Rule 20(c)(i).  To the extent there is any significant daylight between the scope of these rules and those of Federal Rule of Civil Procedure

---

[8]  The Arbitration Provision says that "You may choose the American Arbitration Association . . . or any other organization to conduct the arbitration subject to our approval." [DE 7-1] at 6.

26(b) (allowing discovery regarding nonprivileged matters "relevant to any party's claim or defense and proportional to the needs of the case"), Plaintiff has not identified it.

Still, it is often "recognized that discovery 'is generally much more limited in arbitration' and that 'arbitrators have broad discretion as to grant or deny the ability to obtain discovery.'" *Fla. Holdings III*, 198 So. 3d at 842 (quoting *Green Tree Servicing, LLC v. McLeod*, 15 So. 3d 682, 692 (Fla. 2d DCA 2009)).  Indeed, that is one of the expected cost-saving advantages of arbitration.  *Id.*  At some point, limitations on discovery could be so restrictive that an arbitration agreement becomes substantively unconscionable.  But "[w]hatever those circumstances may be, they must involve something more than an assertion that the discovery provided for in arbitration is more limited than the discovery afforded under the rules of civil procedure."  *Id.*

Finally, Plaintiff's assertion that the Arbitration Provision "reduc[es] Plaintiff's leverage to obtain full compensation and statutory relief" is also unavailing.  Plaintiff does not explain this assertion at all nor point to any particular language or other aspect of the Arbitration Provision to support the idea.  Again, this argument does not seem relevant to evaluating the delegation provision itself.  Moreover, even considering this argument in the context of the Arbitration Provision as a whole, as Santander argues, the Arbitration Provision requires the arbitrator to "apply governing substantive law" and lacks any stated limitation on the type or scope of remedies available.  [DE 7-1] at 6;  *cf. Palm Beach Motor Cars Ltd., Inc. v. Jeffries*, 885 So. 2d 990, 992 (Fla. 4th DCA 2004) ("We agree that the court erred in concluding the [arbitration] clause limited the remedies available to Jeffries, excluded punitive damages, or prevented her from seeking equitable relief from the arbitrators, as the arbitration provision did not include any such limitations.").

23

Thus, Plaintiff has failed to establish that the delegation provision is unconscionable. Consequently, the Court must enforce the delegation provision and leave for the arbitrator to decide whether the Arbitration Provision itself is unconscionable, as well as any other issues regarding arbitrability.[9]

### C. Scope

Plaintiff argues that his FCRA claims fall outside of the Arbitration Provision. [DE 9] at 2. In his "Notice of Supplemental Facts," he also appears to make an argument about scope – asserting that his claims arise from the breach of a subsequent settlement agreement, not the Contract itself – and suggesting that Santander waived its right to arbitration by accepting that settlement agreement. [DE 19]. However, these are issues about the scope of the Arbitration Provision and the arbitrability of Plaintiff's claims. Under the delegation provision, any disputes "including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute," are to be decided by the arbitrator. [DE 7-1] at 6. Therefore, having determined that the delegation provision exists and is enforceable, the Court must leave these arguments for the arbitrator to decide. *See Attix*, 35 F.4th at 1310.

### IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that:

---

[9] As discussed above, Plaintiff's arguments regarding unconscionability are really aimed at the Arbitration Provision as a whole. At the very least, the arguments he makes for why the delegation provision is unconscionable apply at least as much to the Arbitration Provision as a whole, and the analysis of those arguments is equally applicable to determining whether the Arbitration Provision itself is unconscionable. Therefore, even if it were for the Court to decide whether the Arbitration Provision is unconscionable, the Court would determine that Plaintiff has not shown that the Arbitration Provision is unconscionable (for all the reasons stated above).

1. Defendant Santander Consumer USA Inc.'s Motion to Compel Arbitration [DE 7] and Pompano Imports, LLC f/k/a Pompano Imports, Inc d/b/a Vista BMW of Coconut Creek's Motion to Compel Arbitration [DE 16] are **GRANTED**.

2. This action is **STAYED**[10] pending binding arbitration.

3. The Clerk of the Court shall **CLOSE** this case for administrative purposes.

4. All other pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 15th day of May 2026.

Jared M. Strauss
**United States Magistrate Judge**

---

[10] Although Santander's Motion asks the Court to dismiss Plaintiff's claims with prejudice, the FAA directs that, once a court determines an issue should be arbitrated, it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3. While some courts have dismissed, rather than stayed, cases in this posture, the Eleventh Circuit has expressed a preference for cases to be stayed rather than dismissed when a claim is subject to arbitration under the FAA. *See Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992) ("Upon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration." (citing 9 U.S.C. § 3); *see also Caley*, 428 F.3d at 1368 ("[T]he FAA's enforcement sections require a court to stay a proceeding where the issue in the proceeding 'is referable to arbitration under an agreement in writing for such arbitration' . . . ." (emphasis removed) (quoting 9 U.S.C. § 3)).